b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

VERNON LEE DINE,                        CIVIL DOCKET NO. 2:21-CV-01620
Appellant

VERSUS                                  DISTRICT JUDGE CAIN, JR.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,                MAGISTRATE JUDGE PEREZ-MONTES
Appellee

## REPORT AND RECOMMENDATION

Before the Court is claimant Vernon Lee Dine's ("Dine's") appeal from the denial of his claim for Social Security disability income benefits ("DIB"). Although Dine has not shown that the Administrative Law Judge ("ALJ") erred in finding he was not disabled through the date of his opinion, Dine became disabled under Rule 202.02 when he turned 55 (while still insured). Therefore, the final decision of the Commissioner of Social Security ("the Commissioner") should be VACATED, Dine's appeal should be GRANTED IN PART, and the case should be REMANDED to the Commissioner for an award and computation of DIB from July 4, 2022.

## I.   Background

### A.   Procedural Background

Dine filed an application for DIB on October 8, 2019, alleging a disability onset date of February 12, 2019 (ECF No. 8-1 at 147) due to "generalized anxiety disorder, major depressive disorder, diabetes mellitus, diabetic mellitus-retinopathy eyes, and diabetic mellitus-neuropathy legs, feet, hands" (ECF No. 8-1 at 56). That

application was denied by the Social Security Administration ("SSA") both initially and on reconsideration.  ECF No. 8-1 at 82, 88.

A *de novo* hearing was held before an administrative law judge ("ALJ") on September 18, 2020, at which Dine appeared with his attorney and a vocational expert ("VE").  ECF No. 8-1 at 31.

The ALJ found that, although Dine has severe impairments of spine disorders, diabetes mellitus, peripheral neuropathy, bronchitis, obesity, depressive and bipolar-related disorders, trauma and stressor-related disorders, and anxiety and obsessive-compulsive disorders (ECF No. 8-1 at 17), he has the residual functional capacity to perform light work with limitations: he can stand/walk a total of 5 hours in an 8-hour day; can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he can only occasionally balance, stoop, kneel, crouch, and crawl; he can only occasionally use his bilateral lower extremities to operate foot controls; he must avoid unprotected heights, hazardous machinery, rough uneven and vibrating surfaces; he must avoid concentrated exposure to dust, fumes, gases, odors, other pollutants, and poor ventilation; he must avoid concentrated exposure to temperature extremes; he can perform simple and some detailed tasks, he can occasionally interact with coworkers, supervisors, and the public; he can have only occasional changes to the work setting; he can do only occasional work-related decision-making; and he cannot do fast-paced production work, such as assembly-line type of work (ECF No. 8-1 at 19-20).

2

The ALJ further found that, although Dine cannot perform any of his past relevant work, was closely approaching retirement age on the alleged onset disability date (February 12, 2019), and has a limited education, there are jobs existing in substantial numbers in the national economy that he can perform, such as: mail sorter (DOT No. 209.687-026, light, unskilled, SVP 2, 58,323 jobs nationally); hand packer (DOT No. 920.687-166, light, unskilled, SVP 2, 320,994 jobs nationally); and general office clerk (DOT No. 222.587-038, light, unskilled, SVP 2, 217,721 jobs nationally).  ECF No. 8-1 at 23-24.  The ALJ concluded that Dine was not disabled at any time through the date of her opinion on November 25, 2020.  ECF No. 8-1 at 25.

Dine requested a review of the ALJ's decision, but the Appeals Council declined to review it (ECF No. 8-1 at 5) and the ALJ's decision became the final decision of the Commissioner.

Dine then filed this appeal for judicial review of the Commissioner's final decision.  Dine raises the following issues for review (ECF No. 9):

1. The ALJ's physical residual functional capacity determination is not supported by substantial evidence as she failed to analyze the opinion of Dine's treating physician, Dr. Fontenot, in accordance with the prevailing rules and regulations.

2. The ALJ's mental residual functional capacity determination is not supported by substantial evidence as she failed to incorporate the opined social interaction limitation from the state agency consultant's reconsideration determination, which she found persuasive.

### B.  Medical Records

In March 2017, Dine was 49 years old, 72.5 inches tall, weighed 221 pounds, and his blood pressure was 139/76.  ECF No. 8-1 at 312.  Dine had neuropathy of his feet and said he felt good only on oral medications.  ECF No. 8-1 at 312.  Dine had a medical history of diabetes, hyperlipidemia, neuropathy, tobacco use disorder (one pack-per-day), impotence of organic origin, and sleep apnea.  ECF No. 8-1 at 312.  Dine was taking Xanax and metformin.  ECF No. 8-1 at 314.  Dine denied having excessive worries, anxiety, easily losing his temper, depression, agitation, difficulty falling or staying asleep, or memory loss.  ECF No. 8-1 at 313.  Dr. Richard D. Sanders diagnosed: lipid disorder; anxiety depression; essential hypertension, peripheral neuropathy; and uncontrolled Type II diabetes.  ECF No. 8-1 at 314.

In December 2017, Dr. Sanders diagnosed Dine with diabetes mellitus, type II with hyperlipidemia; essential hypertension; anxiety depression; and peripheral neuropathy.  ECF No. 8-1 at 307-08.  Dine was prescribed Cymbalta.  ECF No. 8-1 at 308.

In March 2018, Dr. Benjamin Fontenot examined Dine.  ECF No. 8-1 at Dine 301.  Dine reported that gabapentin no longer controlled his peripheral neuropathy, and he wanted to try prophylactic medication for migraines, due to his history of migraine headaches for more than 20 years.  ECF No. 8-1 at 301.  Dine was prescribed Topamax for his migraines.  ECF no. 8-1 at 302.

In July 2018, Dr. Fontenot treated Dine for diabetes mellitus type II, generalized anxiety disorder, and peripheral neuropathy. ECF NO. 8-1 at 298. Dr. Fontenot noted that Dine was no longer taking insulin, was on a controlled diet, and was taking only metformin (for diabetes) and gabapentin (for peripheral neuropathy). ECF No. 8-1 at 198. Dine's diabetes had significantly improved. ECF No. 8-1 at 299. Dine's anxiety was not well-controlled but was better with two Xanax at a time. ECF No. 8-1 at 298. Dine had a depression severity scale (PHQ-9) score of 7, but denied that his depression makes it difficult for him to work, take care of things at home, or get along with other people. ECF No. 8-1 at 198. Dine's weight was 209 pounds, and his blood pressure was 128/72. ECF No. 8-1 at 299.

In September 2018, Dine weighed 224 pounds and his blood pressure was 120/68. ECF No. 8-1 at 296. Dr. Fontenot found Dine's glucose was well-controlled with diet, his peripheral neuropathy was well-controlled with gabapentin, his anxiety was better-controlled with Xanax, and his migraine headaches were better-controlled since taking Topamax. ECF No. 8-1 at 295.

In January 2019, Dine reported having passed several kidney stones the previous month. ECF No. 8-1 at 291, 350. Dine weighed 227 pounds and his blood pressure was 134/84. ECF No. 8-1 at 293, 351. Dine had normal affect, normal speech pattern, and a good thought process, but was anxious. ECF No. 8-1 at 293. 351. Dine was diagnosed with diabetes mellitus type II with peripheral neuropathy, chronic migraines, mild hyperlipidemia, essential hypertension,

anxiety depression, and urine odor.  ECF No. 8-1 at 293, 351.  Dine was instructed to continue to take Lantus as needed to elevate his glucose, to monitor his blood sugar at home, and to continue to take alprazolam.  ECF No. 8-1 at 293, 351.

In May 2019, Dine reported joint pain and right-sided sciatic pain that started after recently spending a lot of time sitting.  ECF No. 8-1 at 290, 348.  His pain started in his right lower back and radiated down his right leg.  ECF No. 8-1 at 290, 348.  Dine weighed 229 pounds and his blood pressure was 150/68.  ECF No. 8-1 at 290, 348.  Dine has a mildly antalgic gait due to right sciatic pain.  ECF No. 8-1 at 291, 349.  Dine had a normal affect, normal speech pattern, and good thought process, but was anxious.  ECF No. 8-1 at 291, 349.  Dine was prescribed cyclobenzaprine HCL.  ECF No. 8-1 at 291. 349.

In June 2019, Dine reported that Flexeril had not helped his right-sided sciatic pain, and he was having trouble sleeping due to pain.  ECF No. 8-1 at 287, 345.  Alprazolam was working well for Dine's anxiety.  ECF No. 8-1 at 287, 345.  Dine scored 8 on the depression severity scale (PHQ-9) and said it was somewhat difficult for him to do his work, take care of things at home, and get along with other people.  ECF no. 8-1 at 287, 345.  Dine was diagnosed with right sciatica, essential hypertension, and anxiety depression.  ECF No. 8-1 at 288, 346.  Dine's Flexeril was discontinued, he was prescribed Celestone and Tramadol, and he was instructed to continue home stretching, use a heating pad, and continue alprazolam.

6

ECF No. 8-1 at 288, 346.  His Tramadol and cyclobenzaprine were refilled.  ECF No. 8-1 at 289, 347.

In July 2019, Dr. Benjamin Fontenot treated Dine for right sciatic pain.  ECF No. 8-1 at 278, 336.  Dine's recent Toradol injection and ibuprofen had not helped recently.  ECF No. 8-1 at 283, 341.  Dine reported his blood sugar had been elevated lately and he had worsening bilateral peripheral neuropathy symptoms.  ECF No. 8-1 at 283, 341.  Dine was 72.5 inches tall, weighed 231 pounds, and his blood pressure was 118/66.  ECF No. 8-1 at 278, 336.  Dr. Fontenot noted Dine's mild antalgic gait due to right sciatic pain.  ECF No. 8-1 at 279, 337.  Dr. Fontenot diagnosed erectile dysfunction, fatigue, sciatica (right), essential hypertension, and peripheral neuropathy.  ECF No. 8-1 at 279, 337.  X-rays of Dine's lumbosacral spine (for pain radiating down his right leg) showed multilevel multifactorial degenerative changes, but no acute fracture or malalignment.  ECF No. 8-1 at 282, 340.  Dine was given a ketorolac tromethamine (Toradol) injection for his sciatica. ECF No. 8-1 at 285, 343.

In October 2019, Dine weighed 225 pounds and his blood pressure was 120/72.  ECF No. 8-1 at 334. Dine reported elevated blood sugar and increased stress since quitting his job six months earlier.  ECF No. 8-1 at 333.  Dine's medications were adjusted.  ECF No. 8-1 at 334.

In October 2019, Dr. Mohamed Kanaa reviewed Dine's medical records and found exertional limitations: he can only occasionally lift/carry 20 pounds and can

frequently light/carry 10 pounds; he can stand/walk up to 6 hours in an 8-hours day; he can sit more than 6 hours in an 8 hour day; and he can do unlimited pushing and pulling with hands or feet. ECF No. 8-1 at 61.

In November 2019, Dine had a consultative mental status examination with Dr. Billie Myers, Ph.D., a clinical psychologist from Disability Determinations Services. ECF No. 8-1 at 316-19. Dr. Myers noted that Dine's mood appeared irritable, and his affect was constricted and angry. Dine's concentration and attention appeared within functional limits. ECF No. 8-1 at 316. Dine demonstrated persistence and approached the tasks mostly with insight but with agitation and low frustration tolerance. ECF No. 8-1 at 316. Dr. Myers diagnosed: major depressive disorder, recurrent, moderate; and unspecified trauma-and-stress-related disorder with a past history of childhood physical abuse, sexual abuse, and psychological abuse. ECF No. 8-1 at 318-19. Dr. Myers concluded that Dine's overall cognitive functioning did not suggest cognitive impairment. ECF No. 8-1 at 319. However, Dine was struggling with adjusting to being unemployed, struggling to cope with his medical issues; and had difficulties with emotional involvement in relationships with others. ECF No. -1 at 319. Dine did not appear to have difficulties that would impair his basic day-to-day functioning; and was likely able to effectively manage funds, understand others and various concepts, and to maintain attention and concentration. ECF NO .8-1 at 319. When angry, Dine's

judgment is likely questionable and will require utilization of effective coping to manage it.  ECF No. 8-1 at 319.

Dine was treated for an upper respiratory infection in October and November of 2019.  ECF No. 8-1 at 326-331.  At that time, Dine had a normal affect, normal speech pattern, and good thought process, but was anxious.  ECF No. 8-1 at 327, 329.  Since cyclobenzaprine had not helped Dine's right sciatic pain, he was prescribed tizanidine instead.  ECF No. 8-1 at 326.

In March 2020, Dine was 52 years old and weighed 213 pounds.  ECF No. 8-1 at 323.  Dine reported higher blood sugar, for which he was taking Lantus.  ECF No. 8-1 at 323.  Dine's anxiety was currently controlled with medication.  ECF No. 8-1 at 323.  Dine's affect was normal, and he had a normal speech pattern and good thought process but was anxious.  ECF No. 8-1 at 323.  Dine started a trial of Xultophy for his diabetes.  ECF No. 8-1 at 323.

In April 2020, Dr. Lynette Causey, Ph.D. reviewed Dine's medical records and filled out a psychiatric review technique form.  ECF No. 8-1 at 72.  Dr. Causey found Dine has the following mental limitations: a moderate limitation in his ability to understand, remember or apply information; a moderate limitation in his ability to interact with others; and a moderate limitation in his ability to maintain concentration, persistence, or pace.  ECF No. 8-1 at 72.  In a mental residual functional capacity assessment, Dr. Causey found Dine: has a moderate limitation in his ability to understand and remember detailed instructions, but can

9

understand at least simple directions; has a moderate limitation in his ability to carry out very detailed instruction; has a moderate limitation in his ability to maintain attention and concentration for extended periods, but can maintain the attention needed to complete at least simple required work tasks; and has moderate limitations in his ability to interact appropriately with the general public, but can maintain adequate levels of social functioning in work settings that limit contact with the general public and at which feedback is respectfully given. ECF No. 8-1 at 75-77.

In April 2020, Dr. Jeffrey Faludi reviewed Dine's medical records and filled out a physical residual functional capacity assessment. ECF No. 8-1 at 74. Dr. Faludi found Dine: can occasionally lift/carry 20 pounds; can frequently lift/carry 10 pounds; can stand/walk about 6 hours in an 8-hour day; can sit more than 6 hours in an 8-hour day; and can do unlimited pushing and pulling with hand and foot controls, except as limited by lift/carry. ECF No. 8-1 at 74-75. Dr. Faludi found that, despite Dine's physical and mental limitations, he can perform simple jobs without complex instructions. ECF No. 8-1 at 78.

In May 2020, Dr. Fontenot evaluated Dine for anger issues. ECF No. 8-1 at 368. Dine reported fluctuations in his energy level and activity, sometimes alternating with depression, but no significant past manic episodes, and that Prozac helped with his depression. ECF No. 8-1 at 368. Dine weighed 212 pounds, his blood pressure was 132/68, and his blood sugar level was well-controlled. ECF No.

8-1 at 368. Dine was diagnosed with anxiety depression, aggression, and diabetes mellitus, type II with peripheral neuropathy. ECF NO. 8-1 at 368. Dine was prescribed Abilify. ECF NO. 8-1 at 368.

In August 2020, Dine reported low back pain, right knee pain, and severe neuropathy pain. ECF No. 8-1 at 364. Dine also complained of difficulty standing and sitting for periods of time, significant difficulty sleeping, anxiety symptoms, and joint stiffness. ECF No. 8-1 at 364-65. Dine ambulated slowly due to his low back and neuropathy pain. ECF NO. 8-1 at 365. Dine had a flat affect, normal speech, and good thought process. ECF No. 8-1 at 365.

In August 2020, Dr. Fontenot submitted "treating source statement" for Dine. ECF No. 8-1 at 354. Dr. Fontenot, a family medicine doctor, stated he had seen Dine about every 3 months since 2017. ECF No. 8-1 at 354. Dr. Fontenot stated that Dine suffers from bipolar disorder with depression, chronic major depression, Type II diabetes and peripheral neuropathy, chronic migraines, generalized anxiety disorder, hypertension, hyperlipidemia, chronic insomnia, vision impairment, and chronic back pain. ECF No. 8-1 at 354. Dr. Fontenot stated that: (1) Dine's symptoms are likely to be severe enough to interfere with the attention and concentration needed to perform even simple work-related tasks for more than 25% of a typical workday; (2) he can maintain attention and concentration before requiring a break due to symptoms (such as pain or medication side effects) for less than one hour; (3) he is likely to be absent from work as a result of his impairments

11

and/or treatment for more than 4 days per month; (4) Dine can carry 10 pounds frequently and 20 pounds occasionally in a workday due to pain and headaches; (5) he can sit or stand/walk less than an hour at a time so he require a sit-stand option at work; (6) he needs to be able to elevate his leg(s) when he sits; (7) he requires the use of a cane for stability when he walks more than 100 feet; (8) he has full use of his left hand/arm, but only rare or occasional use of his right hand/arm due to right hand neuropathy, decreased hand strength, and right shoulder pain; (9) he can use his bilateral feet for foot controls frequently, but not continuously, due to neuropathy; (10) he can only occasionally kneel; (11) he can only rarely climb stairs and ramps, balance, and crouch; (12) he can never climb ladders and scaffolds, stoop, and crawl; (13) he can only frequently rotate his head and neck; (14) he can only occasionally work around moving mechanical parts; (15) he can rarely operate a vehicle; (16) he can never work at unprotected heights, in humidity and wetness, in extreme cold, and around dust, odors, fumes, and pulmonary irritants; but (17) he can continuously work in extreme heat and around vibrations.  ECF No. 8-1 at 354-57.  Dr. Fontenot further stated that Dine: has depression with thoughts of suicide; is bi-polar with depression; has diabetes; has constant pain in feet and legs due to neuropathy; has foot pain with numbness and unable to feel some toes; is unable to sleep for long periods due to chronic pain in legs and feet; has daily headaches; has extreme fatigue and very little energy to complete tasks; is unable to walk for long periods at a time due to foot pain and back pain; has a loss of

12

balance and has been falling lately due to numbness in his feet; has blurry eyesight; is unable to concentrate and is very forgetful about common tasks; has arthritis in his back with constant pain; has some bladder and bowel control problems; has severe mood swings and is upset easily; is forgetful and must be reminded to do daily tasks such as taking medicine and showers; cannot manage money; has numbness in his fingers and is unable to open things or work with tools; has knee pain and must wear a brace at time; cannot lift more than 30 pounds without severe pain; is unable to handle any kind of stress; has erectile dysfunction; and has medication side effects of drowsiness, dizziness, and stomach pain. ECF No. 8-1 at 358.

A vocational assessment was made in September 2020 from Dine's records by Heather Fahey, M.S.W ("Fahey"). ECF No. 8-1 at 256-57. Fahey concluded that Dine's limitations preclude competitive work. ECF No. 8-1 at 256. Fahey found that: Dine's irritability and need to limit contact with the general public precludes unskilled work; and Dine's need for feedback to be given respectfully requires specialized supervision, which also precludes unskilled work. ECF No. 8-1 at 257.

### C.   <u>Administrative Hearing</u>

Dine appeared at the September 2020 administrative hearing, held by telephone, with his attorney and a VE. ECF No. 8-1 at 31, 33. Dine testified that he: was 53 years old; 6' 2" tall; 211 pounds; right-handed; has a sixth grade education and no GED; and can read and do basic math. ECF No. 8-1 at 36. Dine

has a driver's license but only drives occasionally due to fatigue.  ECF No. 8-1 at 36-37.

Much of Dine's work history is in the aviation industry.  Dine last worked in February 2019 as a senior project manager for EADS Aeroframe Services.  ECF No. 8-1 at 36-37, 161.  Dine's responsibilities included scheduling commercial aircraft for maintenance, walking the aircraft, customer service, scheduling, and releasing the aircraft.  ECF No. 8-1 at 37.  Dine was in charge of five project managers, including air crews, supervisors, leads, and mechanics.  ECF No. 8-1 at 38.  Dine made sure that, on a day-to-day basis, each project manager was getting what he needed.  ECF NO 8-1 at 38.  Dine also walked through the aircraft with customers, made a list of everything that needed work, and negotiated job prices with customers.  ECF No. 8-1 at 38.  Dine had to constantly climb stairs.  ECF No. 8-1 at 38.

Dine also worked for ERA Helicopters as a sheet metal mechanic, repairing the sheet metal and composites on the helicopters.  ECF No. 8-1 at 38-39.  Dine had to lift up to 100 pounds by himself.  ECF No. 8-1 at 38.

At Shaw Services, Dine was a plant manager, supervising about 260 people who held various positions.  ECF No. 8-1 at 39.  Dine had the power to fire, but not to hire.  ECF NO. 8-1 at 39.

14

At AAR Aircraft Services, Dine was a project manager.  ECF No. 8-1 at 39. At Westwind Engineering, Dine was a contractor for North Wood and a night manager for a 707 project.  ECF NO. 8-1 at 39.

In 2017-2019, Dine was self-employed as Dine Aviation Consultants, L.L.C. ECF No. 8-1 at 40.  Dine consulted for Air Canada, so he traveled in the United States and to other countries.  ECF No. 8-1 at 40.  Dine did things such as verify a job was being performed correctly and adhering to regulations and the maintenance manual.  ECF No. 8-1 at 40.  Dine had to climb all over the aircraft.  ECF No. 8-1 at 40.  After Dine broke his wrist, he had to stop working.  ECF No. 8-1 at 40.  Dine's wife is the current CEO and owner of the business, and Dine no longer participates. ECF No. 8-1 at 40.  Dine's wife also worked as the "materials rep."  ECF No. 8-1 at 41.  Dine and his wife were the only employees.  ECF No. 8-1 at 41.

Dine testified that he is no longer able to work because he has neuropathy in his right leg and foot, so his balance is poor, and he has to use a cane all of the time. ECF No. 8-1 at 41.  Dine also cannot talk with anyone without become irritated and angry.  ECF No. 8-1 at 41.

Dine has sciatic nerve problems that prevent him from doing his job anymore.   ECF No. 8-1 at 41.   Dine testified that he was diagnosed with neuropathy,  diabetes,  and  bipolar  disorder.   ECF  No.  8-1  at  42.   He  takes medications, but they make him sleepy.  ECF No. 8-1 at 42, 45.

Dine is able to dress and bathe himself, but has to sit on a chair in the shower. ECF No. 8-1 at 42. Dine does not do laundry, wash dishes, cook, or do yard work. ECF No. 8-1 at 42-43. Dine uses a cane that was prescribed for him by his doctor. ECF No. 8-1 at 43. Dine also uses a knee brace on his left knee that was prescribed for him. ECF No. 8-1 at 43.

Dine can sit for up to 30 minutes before he needs to stand up and can stand for about an hour before he needs to sit. ECF No. 8-1 at 43. Dine can lift about 10 pounds. ECF No. 8-1 at 43. Dine can walk about 100 feet. ECF No. 8-1 at 44.

On a typical day, Dine gets up, take his medicine, showers, and makes lunch in the microwave. ECF No. 8-1 at 44. Then Dine will go outside for a little while, return back inside, take a nap, and drink water. ECF No. 8-1 at 44. Dine spends most of the day–16 to 17 hours–in a recliner or lying down to relieve pain. ECF No. 8-1 at 45. Dine's medications make him tend to fall asleep when he lies down. ECF No. 8-1 at 46. Dine falls asleep at night, then wakes up all night long. ECF No. 8-1 at 44.

Dine has difficulty concentrating on anything, and his short term memory is impaired. ECF No. 8-1 at 46. Dine also has peripheral neuropathy, which causes constant numbness and tingling in his feet and legs. ECF No. 8-1 at 46-47. Dine testified that he has had peripheral neuropathy for 4 ½ years and it is getting worse. ECF No. 8-1 at 47. Dine also has problems balancing and can no longer ride his motorcycle. ECF No. 8-1 at 44-45.

16

The VE testified that Dine's past relevant work was as a: senior project manager (DOT 029.167-014, light SVP 8, skilled); plant manager (DOT 183.117-014, light SVP 8, skilled); sheet metal mechanic (DOT 804.281-010, medium, SVP 7, skilled); business owner (DOT 185.167-046, light, SVP 7, skilled); and aviation service manager (DOT 184.167-082, sedentary, SVP 8, skilled).  ECF No. 8-1 at 48. The VE further testified that the skills Dine acquired are job-specific and industry-specific to the light and sedentary work that he already performed, and there is no transferability to other, alternative light or sedentary work.  ECF No. 8-1 at 48-49.

The ALJ posed a  hypothetical involving a person who: is closely approaching advanced age; has a sixth grade education and no GED; can read and perform basic math; has no transferable job skills; can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; can sit for six hours in an eight-hour day; can stand and walk for five hours in an eight-hour day; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can only occasionally balance, stoop, kneel, crouch, and crawl; can occasionally operate foot controls bilaterally; must avoid unprotected heights, hazardous machinery, rough, uneven and vibrating surfaces; must avoid concentrated exposure to dust, fumes, gases, odors, pollutants, poor ventilation, and temperature extremes; can perform simple and some detailed tasks; can have only occasional interaction with the public, co-workers and supervisors; can have only occasional changes to the work setting; can have only

occasional work-related decision-making; and cannot do fast-paced production work such as assembly line type work. ECF No. 8-1 at 49-50.

The VE testified that such a person could do a very limited range of light work and the full range of sedentary work. ECF No. 8-1 at 50. The individual could not return to his past relevant work but could do such work as: mail sorter (DOT 209.687-026, light, SVP 2, unskilled, 58,323 jobs nationally); hand packer (DOT 920.687-166, light, SVP 2, 320,994 jobs nationally); and general office clerk (DOT 222.587-038, light, SVP 2, unskilled, 217,721 jobs nationally).

The ALJ gave a second hypothetical wherein the individual: can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; can sit for less than one hour in an eight-hour day; can stand/walk for less than one hour in an eight-hour day; requires a sit-stand option, at will; must be allowed to carry a cane all day; is right-hand dominant; can occasionally reach overhead, handle and finger with the upper right extremity; can rarely reach in all directions; can feel, push, and pull with the lower extremities bilaterally; can operate foot controls; can rarely climb ramps and stairs; can never climb ladders or scaffolds; can only occasionally kneel; can frequently rotate his head and neck; can never work at unprotected eights, humidity, wetness, dust, odors, fumes, pulmonary irritants, and extreme cold; can rarely operate a vehicle; can occasionally move mechanical parts; would be off-task greater than 25 percent of the work day; and would miss more than four days of work per month. ECF No. 8-1 at 51.

The VE testified that such an individual could do less than the full range of sedentary work, would not be able to return to his past relevant work, and there would not be any other work he could do.  ECF No. 8-1 at 51.

D.     **ALJ's Findings**

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Dine (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.  *See Greenspan*, 38 F.3d at 237.

In the case at bar, the ALJ found that Dine has not engaged in substantial gainful activity since February 12, 2019 (the alleged onset date), that his disability insured status expires on December 31, 2023, and that he has severe impairments of spinal disorders, diabetes mellitus, peripheral neuropathy, bronchitis, obesity, depressive and bipolar-related disorders, trauma and stressor-related disorders, anxiety, and obsessive-compulsive disorder, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1.  ECF No. 8-1 at 17-18.

At 51 years old, Dine was closely approaching retirement age on the disability onset date, and had a limited education.  ECF No. 8-1 at 23.

At Step No. 5 of the sequential process, the ALJ further found that Dine has the residual functional capacity to perform a limited range of light work, but is unable to perform his past relevant work.  ECF No. 18-1 at 19.  However, Dine can perform other light work that exists in significant numbers in the national economy, such as mail sorter, hand packer, and general office clerk.  ECF No. 18-1 at 24. Therefore, Dine was not under a disability at any time from February 12, 2019, through the date of the ALJ's decision on November 25, 2020.  ECF No. 8-1 at 24-25.

II.   **Law and Analysis**

A.   **Scope of Review**

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983).  The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court.  *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th

Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

**B.** **Substantial evidence supports the ALJ's findings that Dine has the residual functional capacity to do a limited range of light work.**

Dine contends the ALJ's physical residual functional capacity determination is not supported by substantial evidence because she failed to analyze the opinion of Dine's treating physician, Dr. Fontenot, in accordance with the prevailing rules and regulations.

Dine argues that that, pursuant to SSR 96-80, Title II & XVI: Assessing Residual Functional Capacity in Initial Claims, the RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with the opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

The ALJ considered Dr. Fontenot's opinion and the opinions of the DDS physicians in accordance with the new requirements set forth in 20 C.F.R. § 404.1520c. ECF No. 8-1 at 20. The new regulations provide that, for claims filed on or after March 27, 2017, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s),"

including those from treating physicians.  *See Jones v. Commissioner of Social Security Administration,* 2022 WL 3509035, at *7 (W.D. La. 2022), *report and recommendation adopted,* 2022 WL 3448676 (W.D. La. 2022) (*citing* 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a)).  The revised regulations did not retain the longstanding "treating source rule," which requires deference to treating source opinion evidence in absence of certain other specific findings.  *See Jones,* 2022 WL 3509035, at *7 (*citing* 20 C.F.R. § 404.1527, 20 C.F.R. § 416.927).

Under the new regulations, rather than assigning weight to the medical opinions, the Commissioner must articulate "how persuasive" he finds the medical opinions.  *See Jones,* 2022 WL 3509035, at *7 n. 5 (*citing* 20 C.F.R. § 416.920c(b)).  And the Commissioner's consideration of the persuasiveness of medical opinions is guided by the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion.  *See Jones,* 2022 WL 3509035, at *7 n. 5 (*citing* 20 C.F.R. § 404.1520c(c)(1)-(5); 20 C.F.R. § 416.920c(c)(1)-(5)).

"Supportability" and "consistency" are the most important factors.  *See Jones,* 2022 WL 3509035, at *7 n. 5 (*citing* 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2)).  The ALJ must explain these factors, but he need not expound on

the remaining three unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *See Jones,* 2022 WL 3509035, at *7 n. 5 (*citing* § 416.920c(b)(2)-(3)); *see also Bertrand v. United States Commissioner of Social Security,* 2022 WL 4138721, at *6 n. 51 (W.D. La. 2022), *report and recommendation adopted,* 2022 WL 4134859 (W.D. La. 2022) (*citing Dotson v. Kijakazi,* 2022 WL 180654, at *2 (N.D. Miss. 2022)); *White v. Kijakazi,* 2022 WL 3130259, at *10 (W.D. La. 2022) *report and recommendation adopted,* 2022 WL 3129044 (W.D. La. 2022); *Harris v. Commissioner of Social Security Administration,* 2022 WL 421121, at *9 (W.D. La. 2022), *report and recommendation adopted,* 2022 WL 421080 (W.D. La. 2022); *D.J. v. United States Commissioner of Social Security,* 2020 WL 4742810, at *3 (W.D. La. 2020), *report and recommendation adopted,* 2020 WL 4740483 (W.D. La. 2020). The fact that a medical source actually examined the claimant or specializes in an area germane to the claimant's medical issues are not primary or dispositive considerations in assessing the medical opinion. *See Jones,* 2022 WL 3509035, at *7 n. 5 (*citing* 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c)).

The regulations direct an ALJ to consider a medical opinion's persuasiveness based on how much the objective medical evidence and medical source's explanation support the medical opinion and how consistent the medical opinion is with the evidence from other sources. *See Harris,* 2022 WL 421121, at *9 (*citing* 20 C.F.R. § 416.920c(c)). "Supportability" denotes "[t]he extent to which a medical source's

opinion is supported by relevant objective medical evidence and the source's supporting explanation." *See Harris,* 2022 WL 421121, at *9 (*citing* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

The ALJ's findings as to Dine's physical residual functional capacity, which are supported by the assessments of Dr. Kanaa and Dr. Faludi, as well as Dine's testimony, satisfy these requirements. The ALJ made the following findings as to Dr. Fontenot's opinion (ECF No. 8-1 at 22):

> As for the rest of the opinion evidence, the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical sources. The undersigned fully considered the medical opinions and prior administrative medical findings in this case as follows.

> Fontenot's opinion is unpersuasive. Ex. 4F. It is inconsistent with and unsupported by his own generally normal findings, no referrals to specialists or mental health providers, and conservative treatment. The opinions of the State agency medical consultants are somewhat persuasive. Exs. 2A, 4A. The limitations assessed were consistent with the evidence received at the time. However, giving the claimant's testimony the benefit of the doubt, and considering the claimant's slow ambulation at his last office visit, the undersigned finds the additional limitations are more supported by the evidence.

Therefore, the ALJ adequately supported his findings as to Dine's physical residual functional capacity.

Dine also argues that he was uninsured and was paying for his own medical exams and procedures, so he could not afford specialists or invasive procedures. Dine points out that Dr. Fontenot's records show that Dine was uninsured and

paying cash for his healthcare – "self-pay" is in the "insurance" section of all of Dine's medical records, even when he was working.

Dine cites *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987), wherein the United States Fifth Circuit Court of Appeals held that if "the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'" *See also Sanders v. Apfel*, 136 F.3d 137, at *1 (5th Cir. 1998); *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986); *Broussard v. Commissioner of Social Security Administration*, 2015 WL 339490, at *9 (W.D. La. 2015) ("When a claimant's lack of treatment is explained by an inability to afford medical care, the claimant's lack of treatment should not be used to establish that she is not disabled."). However, Dine has not shown that his condition is disabling in fact, even without an MRI or invasive treatment. Moreover, the ALJ did not rely on Dine's lack of an MRI or lack of specialized care to find he was not disabled. Instead, the ALJ assessed Dine's residual functional capacity and found he could do some work.

Dine also disputes the ALJ's statement that Dr. Fontenot's findings were "generally normal." According to Dine's medical records, his sciatic pain (caused by "multilevel multifactorial degenerative changes" in his lumbosacral spine) was not constant, and he received treatment for it. Dine's diabetes, hypertension, and anxiety were controlled through diet and medication. Dine suffered from peripheral neuropathy that was gradually worsening, but there is no evidence that it precluded

26

him from all work activity. Because Dine's symptoms fluctuated from month to month and were not constant, most of Dr. Fontenot's findings in an exam would be normal.

Dine argues the ALJ's finding that he has the mental residual functional capacity to perform a limited range of light work is not supported by substantial evidence. The ALJ's findings are supported by the mental residual functional capacity assessments of Dr. Meyers and Dr. Causey and satisfy the requirements of supportability and consistency. The ALJ found:

> The opinion of the State agency psychological consultant at the initial level is not persuasive because it is inconsistent with and unsupported by Dr. Myer's observations, which supports moderate limitations in understanding, remembering, or applying information and interacting with others. Finally, the opinion of the State agency psychological consultant on reconsideration is more persuasive because it is supported by Dr. Myers's mental status examination and is consistent with the overall record.

The ALJ cited the medical evidence that supports her findings as to Dine's mental residual functional capacity and indicated the consistency of her findings with medical sources.

Dine further contends the ALJ failed to incorporate a moderate limitation in social interaction in his residual functional capacity and the hypothetical to the VE. Dine argues that, since the ALJ found Dr. Causey's assessment to be "more persuasive," he should have incorporated all of her stated limitations, including the moderate limitation in Dine's ability to interact appropriately with the general public. ECF No. 8-1 at76. However, Dr. Causey also found that, despite his

periodic irritability, Dine is able to maintain adequate levels of social functioning in work settings that limit contact with the general public and at which feedback is respectfully given.  ECF No. 8-1 at 75-77.  Because the ALJ's hypothetical included the limitation the Dine "can have only occasional interaction with the public, co-workers and supervisors," it adequately incorporated Dr. Causey's social limitations.

Therefore, substantial evidence supports the ALJ's/Commissioner's finding that Dine had the physical and mental residual functional capacity to perform a limited range of light work from February 12, 2019 to November 25, 2020.

C.    **Dine's case should be remanded for an award of DIB because he now meets Rule 200.02.**

During the pendency of Dine's appeal, he reached advanced age and matches Rule 202.02 of the Medical Vocational Guidelines.  Therefore, Dine is now considered disabled.

The "rules" of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids") can direct a conclusion as to whether or not a claimant is disabled.  Sec. 200.00(a) of Appendix 2 states this as follows:

> "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."

The U.S. Supreme Court has upheld the use of these Guidelines by the Commissioner in lieu of calling a vocational expert to testify.  *See Heckler v.*

28

*Campbell*, 461 U.S. 458, 467 (1983); *see also Harrell v. Bowen*, 862 F.2d 471, 478 (5th Cir. 1988).    "If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either 'disabled' or 'not disabled' depending upon the claimant's specific vocational profile (SSR 83–11)."    *Pete v. Commissioner of Social Security*, 2015 WL 9685503, at *5 (W.D. La. 2015), *report and recommendation adopted*, 2016 WL 112719 (W.D. La. 2016).    "When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations (SSRs 83–12 and 83–14)."    *Pete*, 2015 WL 9685503, at *5.

Dine turned 55 years old on July 4, 2022,[1] and is insured for DIB through 2023.    Under the ALJ's findings, Dine is entitled to benefits under Rule 202.02 of Table 2, 20 C.F.R. Pt. 404, Subpt. P, App. II.

Sec. 200.00(a) of Appendix 2 states:

Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.

Rule 202.02 states that a claimant, such as Dine is considered disabled if he is: advanced age (55 and older) (see 20 C.F.R. § 416.963(e)); has a "limited or less"

---

[1] In February 2019, Dine was 51 years old.  Since Dine's date of birth is July 4, 1967, he turned 55 years old on July 4, 2022.

education (11th grade or less–Dine has a sixth grade education) (20 C.F.R. § 416.965(b)(3)); and has previous work experience that is skilled or semi-skilled, but the skills are not transferable.

Because Dine reached advanced age after the ALJ's/Commissioner's decision and was still insured, and Dine's qualifications, as previously found by the ALJ, match those listed in Rule 202.02, the Medical-Vocational Guidelines direct a conclusion that Dine was "disabled" as of July 4, 2022.  Therefore, Dine's case should be remanded to the Commissioner for an award of DIB benefits pursuant to Rule 202.02.  *See Giles R. v. Kijakazi*, 2021 WL 4502842, at *10 (S.D. Tex. 2021) (*citing Garrison v. Colvin*, 759 F.3d 995, 1023 (9th Cir. 2014) ("'The court shall have power to enter, upon the pleadings and transcript of the record, a judgment...reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.' 42 U.S.C. § 405(g).  A court may also issue a final judgment that a claimant is 'entitled to any payment or payments under this subchapter.' 42 U.S.C. § 405(i)"); *Garrison*, 759 F.3d at 1023 (finding the district court erred by remanding for a new hearing when nothing further in the record needed to be developed and giving instructions to remand for the calculation and award of benefits).  *Compare Trevino v. Astrue*, 2009 WL 2886317, at *6 (S.D. Tex. 2009) ("This Court finds that under the applicable law, the ALJ was required to apply Grid Rule 201.06 and therefore was required to enter a finding of disabled."); *Brown v. Astrue*, 2009 WL 1228487, at *7 (N.D. Tex. 2009) (The court

can reverse the ALJ and direct that benefits be paid (as opposed to remanding for further proceedings) where additional fact finding by the ALJ is unnecessary to determine that a claimant is disabled under the Social Security Act.).

III.    <u>Conclusion</u>

IT IS RECOMMENDED that Dine's appeal be GRANTED, and the final decision of the Commissioner of Social Security be VACATED, that Dine's appeal be GRANTED IN PART, and that Dine's case be REMANDED to the Commissioner for an award and computation of DIB from July 4, 2022, pursuant to Rule 202.02.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings

31

or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __7th__ day of November 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge